# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**VERA "PAULETTE" BALLARD**                                                 **PLAINTIFF**

**V.**                                                          **CAUSE NO.: 1:07CV95-SA-JAD**

**NORTH MISSISSIPPI HEALTH SERVICES, INC.,**
**NORTH MISSISSIPPI MEDICAL CLINICS, INC.,**
**ROGER BROWN, LYNN NELSON, and WANDA WALLACE**       **DEFENDANTS**

## MEMORANDUM OPINION

Comes now before this Court, Defendants' Motion for Summary Judgment [53]. After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

*A. Factual and Procedural Background*

Vera "Paulette" Ballard was a registered nurse in the North Mississippi Medical Clinics, and particularly the Internal Medicine Associates ("IMA") Clinic. In her position, she was known as the "Remicade Nurse" or "IV Nurse" because of her job duties involving mixing the Remicade medication, starting IVs, and monitoring patients while receiving IVs. Ballard was the only "Remicade Nurse" at the IMA Clinic. Beginning around September 2005, Ballard allegedly began experiencing blurred vision and aching joints. Ballard attributed these symptoms to her work environment, which she contends includes toxic mold, and the Remicade medication.

On the afternoon of October 31, 2005, Connie Renfroe, Ballard's immediate supervisor, relieved Ballard of her job duties so she could visit an eye doctor. Renfroe discovered a syringe in the regular trash can in Ballard's area, which is a violation of infection control guidelines. The following day, Renfroe again inspected Ballard's work area and noted several instances of non-compliance with infection control guidelines. Renfroe contacted Wanda Wallace, office manager of North Mississippi Medical Clinics, to help document the perceived inadequacies. They noted the

presence of unused test tubes, glass vials, sterile 4X4s, IV tubing, and clean open 2X2s in the regular trash receptacle. They also found a large number of unauthorized items in the hazardous waste bin and discarded unused supplies in violation of North Mississippi Medical Clinics' policy. Renfroe and Wallace also inspected Ballard's area on November 2, 2005, after Plaintiff had left for the day and found similar non-compliance issues. Ballard then took off work from November 3, 2005, through November 21, 2005.

When Ballard returned to work on November 22, Renfroe and Wallace met with Ballard to discuss the non-compliance issues which they had documented in a written Disciplinary Warning. At the conclusion of their meeting, Ballard refused to sign the Disciplinary Warning acknowledging that she would make a good faith effort to correct the issues identified. Because of her refusal, she was notified of her right to appeal the Disciplinary Warning in accordance with the grievance process found in the employee handbook.

Ballard appealed the Disciplinary Warning to Lynn Nelson, the Human Resources Manager for North Mississippi Medical Clinics. Nelso reviewed the Warning and investigated the charges and determined that a few of the supplies issues should be reduced to verbal warnings while the remainder of the Disciplinary Warning should be upheld. Nelson communicated her decision to Ballard on December 1, 2005. Nelson followed up with a letter dated December 5, 2005, outlining that to continue her appeal process, Ballard would have to contact Rodger Brown, Vice President of Human Resources for North Mississippi Health Services, Inc. Also in her letter, Nelson clarified that if Ballard did not elect to appeal and refused to acknowledge and commit to correcting the issues in the Disciplinary Warning by noon on December 9, 2005, she would be considered as having abandoned her employment with the North Mississippi Medical Clinics and would be removed from

the payroll.

On December 2, 2005, Ballard's attorney wrote Rodger Brown a letter requesting that Ballard be transferred because the alleged fungal contamination at IMA was the cause of her supposed condition. He also noted that Ballard felt that IMA was trying to "get rid of" her in an attempt to hide evidence of the alleged contamination at the clinic. Rodger Brown responded on December 19, 2005, that Ballard had the opportunity to appeal the decision regarding the Disciplinary Warning; therefore, Ballard had the opportunity to request a transfer at the appeal. Brown further declared that because Ballard had failed to contact him on or before December 9, she was removed from the payroll, but that if she wanted to appeal that decision, she should follow the grievance procedure as set out in the employee handbook. Rodger Brown also responded that third parties have no standing to appeal in internal employee matters; therefore, Ballard's attorney's letter would not be accepted as an appeal of the Disciplinary Warning issued.

Ballard did not respond to Rodger Brown's letter and filed an Equal Employment Opportunity Commission charge on May 8, 2006, alleging she was terminated because of her disability or perceived disability. Further, Ballard claimed that the North Mississippi Medical Clinic and North Mississippi Health Services violated her Americans with Disabilities Act ("ADA") rights by failing to accommodate her disability by transferring her away from the alleged toxic conditions of her workplace.

Ballard was issued a right to sue letter, and she filed suit in this court on April 23, 2007. In that complaint, Ballard alleges that she was the victim of discrimination based on her disability, she was retaliated against because she requested a reasonable accommodation, and her contractual relationship with North Mississippi Medical Clinics was maliciously interfered with by Rodger

3

Brown. The Defendants filed this Motion for Summary Judgment at the close of discovery in this case.

*B. Summary Judgment Standard*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (citing FED. R. CIV. P. 56(c), (e)). That burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). All legitimate factual inferences must be made in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the nonmovant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

*C. Discussion and Analysis*

*(i) ADA Discrimination*

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual

4

with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 476 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)). To prevail, a plaintiff must first demonstrate that(1) she suffers from a disability; (2) she is qualified for the job; (3) she was subjected to an adverse employment action; and (4) she was replaced by a non-disabled employee or treated less favorably than a non-disabled employee. See Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999).

A disability within the meaning of the ADA is "a physical or mental impairment that substantially limits one or more of the major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2). Ballard argues that she is protected by either the first or third prong of the disability definition.

Under the first prong, "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); Robinson v. Global Marine, 101 F.3d 35, 36 (5th Cir. 1996), *cert. denied,* 520 U.S. 1228, 117 S. Ct. 1820, 137 L. Ed. 2d 1028 (1997). "With respect to the major life activity of working . . . the term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 190 (5th Cir. 1996); Maulding v. Sullivan, 961 F.2d 694, 698 (8th Cir. 1992), *cert. denied*, 507 U.S. 910, 122 L. Ed. 2d 653, 113 S. Ct. 1255 (1993).

Moreover, the inability to perform in a specific environment, coupled with the ability to perform outside that environment, does not satisfy the substantial limitation requirement. See Henderson v. New York Life, 991 F. Supp. 527, 536 (N.D. Tex. 1997); Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 723-24 (2d Cir 1994), *cert. denied*, 513 U.S. 1147, 115 S. Ct.1095, 130 L. Ed. 2d 1063 (1995) (applying analogous Rehabilitation Act); Mobley v. Bd. of Regents of the Univ. Sys. of Georgia, 924 F. Supp. 1179, 1187 (S.D. Ga. 1996).

The cases which address impairments occurring only in the plaintiff's work environment, and which either are alleviated or nonexistent outside that environment, find that the plaintiffs have not shown that they are disabled, because they have shown only that they cannot perform a specific job. See, e.g., Heilweil, 32 F.3d at 723; Mobley, 924 F. Supp. at 1187; Patrick v. Southern Co. Servs., 910 F. Supp. 566, 570 (N.D. Ala. 1996), *aff'd*, 103 F.3d 149 (11th Cir. 1996); Sharp v. Abate, 887 F. Supp. 695, 699-700 (S.D.N.Y. 1995); Byrne v. Bd. of Educ., 979 F.2d 560, 565 (7th Cir. 1992)(a person's inability to perform a specific job for a specific employer does not substantially limit a person's ability to work); Welsh v. City of Tulsa, 977 F.2d 1415, 1419 (10th Cir. 1992) ("An impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Act."); Maulding v. Sullivan, 961 F.2d 694, 698 (8th Cir. 1992) (plaintiff was not handicapped under the Act because sensitivity to chemicals prevented her from working only in lab and did not substantially limit employment opportunities as a whole), *cert. denied*, 507 U.S. 910, 113 S. Ct. 1255, 122 L. Ed. 2d 653 (1993); Forrisi v. Bowen, 794 F.2d 931, 935 (4th Cir. 1986) (substantial limitation on person's ability to work occurs when impairment forecloses generally "the type of employment involved"); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 1994) (for plaintiff to show allergy to tobacco smoke substantially limited ability to work, she had to show allergy

6

foreclosed employment opportunities in her field).

In Rhoads v. FDIC, 257 F.3d 373 (4th Cir. 2001), the Fourth Circuit held that the plaintiff, who had a cigarette smoke allergy and smoke induced migraines, was not disabled within the meaning of the ADA. The court explained that the plaintiff "failed to make a sufficient showing that she was substantially limited in her ability to work, where she has established only that she was unable to function in one particular smoke-infested office." Id. at 388. Furthermore, "there appeared to be no reasonable material or relevant factual dispute concerning [Rhoads's] ability to perform her job requirements at a very high level, provided that she is given the opportunity to perform her work in a smoke-free atmosphere . . . ." Id. Hence, the court found that the plaintiff had "not shown, as required, that she is generally foreclosed from jobs utilizing her skills because she suffers from smoke-induced asthma and migraines." Id. Accordingly, the court affirmed the grant of summary judgment in favor of the defendant on the plaintiff's failure to accommodate claim. See also Sutton, 527 U.S. at 492, 119 S. Ct. 2139 (finding that "to be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice.")

Ballard asserts that she is disabled by her vision impairment and the debilitating pain caused by her physical condition. Although Ballard has put forth evidence showing that she has been diagnosed with an impairment, she has not shown a disability because her exhibits also show that she recovers when away from the workplace. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-83, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999) (holding that "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity"). Indeed, in her response to the Defendants'

summary judgment motion, Ballard asserts, "the summary judgment record establishes that Ballard's condition worsened whenever she worked for long-periods and improved when she was away from the facility." Ballard additionally attached her physician's notes which state that "[w]hile off work, [Ballard] had been doing 100 times better," and that her symptoms occurred "during work week only." In her designation of expert witnesses, Ballard also explained that "Dr. Barlow will testify that Plaintiff presented with numerous physical complaints, which worsened when she was at work, and cleared during weekends and during other times she was away from her place of employment."

Individuals claiming disability status under the ADA may not rely merely on evidence of a medical diagnosis of an impairment but must present "'evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002) (citation omitted). Ballard fails to show that her condition has substantially limited her major life activities, and on the record presented she fails to show a genuine issue of material fact that she is disabled under the first prong of the ADA.

Ballard also argues that her employer regarded her as being disabled. Ballard contends that Connie Renfroe, Ballard's direct supervisor, knew of her vision impairment and came by to inquire about her condition on November 1 and 2, 2005. The Plaintiff cites as further evidence that her employer knew of her impairment and regarded her as disabled the following excerpt of Paulette Ballard's deposition:

> Q: How did - - how did the defendants regard you as having a disability? Why do you feel that way?
>
> A: I feel like they knew I couldn't see.

> Q: Why would they know that?
>
> A: They could look at me and tell, I'm sure.

The Fifth Circuit has previously set forth the manner in which one might establish that they were regarded as disabled by their employer:

> One is regarded as having a substantially limiting impairment if the individual (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.

Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 508 (5th Cir. 2003) (citing Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996)). Ballard asserts that her employer knew of the difficulties of her vision impairment and considered her as suffering under a physical impairment that constituted a substantial limitation on her major life activity of working.

A plaintiff must show that the employer perceived a disability that substantially limited him in one or more major life activities. See Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1119 (5th Cir. 1998). Where, as here, the plaintiff alleges that working is the life activity in which she is limited, she must demonstrate that the perception of disability would limit her from a broad class of jobs, defined as "jobs utilizing similar training, knowledge, skills or abilities, within that geographical area . . . ." See Gowesky, 321 F.3d at 508 ("The EEOC regulations make plain that an inability to perform one particular job, as opposed to a broad range of jobs, does not constitute an impairment that substantially limits one's ability to work.") (citing 29 C.F.R. § 1630.2(j)(3)(i)); Sherrod, 132 F.3d at 1120 (5th Cir. 1998) ("Evidence of disqualification from a single position or narrow range

of jobs will not support a finding that an individual is substantially limited from the major life activity of working.") (citing Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995)); Bridges, 92 F.3d at 334 (citing 29 C.F.R. § 1630.2(j)(3)(ii)(B)).

Ballard's claim fails, because she has at most demonstrated that her alleged perceived disability–vision impairment such that she cannot read the pump levels--affects only a "narrow range of jobs." Indeed, Ballard seems to be arguing not that her impairment prevented her from being a Remicade nurse, but that her workplace caused her impairment thus constituting ADA discrimination because she was not transferred prior to being deemed to have abandoned her job.

Accordingly, Plaintiff's ADA discrimination claim must be dismissed as she is not disabled under the ADA and the Plaintiff's employer did not regard her as disabled or substantially limited in the major life activity of working.

*(ii) ADA Retaliation*

To demonstrate unlawful retaliation, a plaintiff must make a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action. Seaman, 179 F.3d at 301. If the plaintiff establishes a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action. Id. If such a reason is provided, the plaintiff must submit sufficient evidence that the proffered reason is a pretext for retaliation. Id. The employee must show that but for the protected activity, the adverse employment action would not have occurred. Id. Further, "in order to prosecute an ADA retaliation claim, plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief that the statute has

been violated suffices." Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1264 (10th Cir. 2001). Indeed, in contrast to an ADA discrimination claim, a plaintiff bringing an ADA retaliation claim need not demonstrate that he has a disability. Krouse v. Am. Sterilizer, 126 F.3d 494, 502 (3d Cir. 1997). "By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." Id. (quoting 42 U.S.C. § 12203(a)). Therefore, Ballard's failure to prove her disability does not preclude her from attempting to establish a retaliation claim.

With respect to the first element, Ballard asserts that her attorney's letter of December 2, 2005, constituted a request for an accommodation under the ADA. Thus, she asserts that she has shown that she engaged in a protected activity. It is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity. E.g., Jones v. U.P.S., 502 F.3d 1176, 1194 (10th Cir. 2007). The ADA requires "making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

The record establishes that Ballard was free to seek another position within the Health Services internal system at any time during her employment, and Ballard admitted that there were plenty of positions open prior to December 2005 for which she was qualified. Ballard asserts that her attorney's letter to Rodger Brown constituted a request for a reasonable accommodation; therefore, her termination seven days later was caused by that request.

As noted above, Lynn Nelson's letter of December 5, 2005, explained that if Ballard failed

to acknowledge and sign the Disciplinary Warning or appeal Nelson's decision by noon on December 9, 2005, Ballard would be removed from the payroll. Rodger Brown acknowledged that he received and opened Ballard's attorney's letter which allegedly requested an accommodation on December 6. Therefore, prior to Plaintiff's request for an accommodation, North Mississippi Medical Clinic had advised Plaintiff that if she did not take any action with regard to the Disciplinary Warning, she would be removed from the payroll. None of the evidence Plaintiff presented sufficiently demonstrates retaliatory intent to establish that Defendants' proffered reason for disciplining or discharging Plaintiff was pretext or was causally connected to Plaintiff's exercise of a protected right. As such, Ballard cannot prove that but for the request for an accommodation, she would not have been removed from the payroll. Accordingly, she has not put forth a genuine issue of material fact and summary judgment is warranted as to the retaliation charge.

*(iii) Malicious Interference with Contractual Relationships*

Ballard asserts that Rodger Brown's actions prove that he sought to retaliate against Ballard for complaining about her work environment and involving an attorney in the grievance process.

Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury. Shaw v. Burchfield, 481 So. 2d 247, 254-55 (Miss. 1985). Tortious interference even with at-will employment can be the basis of a claim. Levens v. Campbell, 733 So. 2d 753 (Miss. 1999).

In order to prove tortious interference with a contract, a plaintiff must normally show these elements: 1) the acts were intentional and willful; 2) that they were calculated to cause damages to

12

the plaintiffs in their lawful business; 3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred. Levens, 733 So. 2d at 760-61. However, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." Shaw, 481 So. 2d at 255.

Ballard argues that because there was no written policy preventing attorneys from becoming involved in internal employee matters, along with Brown's refusal to accept her attorney's correspondence as an "appeal" is evidence that Rodger Brown acted in bad faith in terminating Ballard. However, there is nothing in the evidence to support a dispute of material fact that Brown went beyond his right - his privilege - to handle internal employee matters and engaged in malicious conduct directed at Ballard.

Brown testified that the disciplinary violations were not offenses that Ballard would be terminated for; however, her refusal to acknowledge that she would change her behavior caused her termination. Moreover, he stated that attorneys are not allowed to be present in a Disciplinary Warning appeal. Although he admitted this was not a written policy, Brown asserted that North Mississippi Health Services engaged in the practice of disallowing employees to be represented in such processes. Brown also testified that Ballard was free to request a transfer at any time during her employment without asking or getting permission from anyone to begin that process. However, Ballard did not request a transfer through the normal means available.

Ballard has failed to show that Brown's refusal to allow her to be represented by counsel at her disciplinary conference or that his failure to transfer her was in bad faith. Plaintiff has shown no evidence that Brown allowed others to be represented during such conference or that he

transferred others when requested by a third party. As such, she has failed to allege a genuine issue of material fact regarding Brown's alleged tortious interference with her employment contract. Therefore, this claim is dismissed on summary judgment as well.

## *D. Conclusion*

Ballard's alleged impairment improved significantly when she was away from the workplace. Accordingly, such impairment does not constitute a disability under the ADA. Moreover, Ballard cannot causally connect her supposed request for accommodation and the adverse employment action against her. As such, her ADA retaliation claim must be dismissed as well. Rodger Brown's involvement with the Paulette Ballard discipline matter was within the scope of his privilege as her employer, and as Ballard has presented no evidence of bad faith on Brown's part in removing her from the payroll, such claim is dismissed.

A separate order shall issue forthwith this day.

SO ORDERED, this the  15th  day of October, 2008.

                                           /s/ Sharion Aycock                
                                           **U.S. DISTRICT JUDGE**